## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## BEAUFORT DIVISION

| | | |
|---|---|---|
| STANLEY SCHMITIGAL and MARJORIE SCHMITIGAL, | ) ) | |
| Plaintiffs, | ) ) | No. 9:19-cv-01511-DCN |
| vs. | ) ) | |
| PAUL TWOHIG and FORD MOTOR COMPANY, | ) ) ) | **ORDER** |
| Defendants. | ) ) | |

The following matter is before the court on defendant Ford Motor Company's ("Ford") motion to dismiss, ECF No. 9, and motion to stay discovery, ECF No. 10. For the reasons set forth below, the court grants Ford's motion to dismiss. Because the court grants Ford's motion to dismiss, Ford's motion to stay is moot.

### I.  BACKGROUND

This is a products liability action that arose from a car accident in which plaintiffs Stanley and Margorie Schmitigal (collectively, "plaintiffs") were injured. On February 16, 2018, plaintiffs were restrained passengers in their 2014 Ford Edge, which was driven by their daughter. Stanley sat in the front passenger seat and Marjorie sat in the rear passenger seat behind Stanley. While stopped at an intersection on U.S. Highway 278, plaintiffs' vehicle was struck from behind by defendant Paul Twohig's ("Twohig") BMW sedan. Upon impact, plaintiffs' vehicle's front passenger seat deformed rearward causing Stanley to travel into the back passenger compartment and strike Marjorie, injuring them both.

Plaintiffs brought the instant action on May 5, 2019, asserting a negligence claim against Twohig and products liability claims against Ford. Relevant to the motion to

1

dismiss, plaintiffs have asserted against Ford: (1) a strict liability claim, (2) a negligence claim, and (3) a breach of warranty claim, all sounding in products liability and alleging a manufacturing or design defect in the front passenger seat of the 2014 Ford Edge.  Ford filed a motion to dismiss on June 25, 2019, ECF No. 9, claiming that the court lacks the constitutional authority to exercise personal jurisdiction over it.  Plaintiffs responded to Ford's motion to dismiss on July 7, 2019, ECF No. 15, and Ford replied to plaintiffs' response on July 15, 2019, ECF No. 17.  The court held a hearing on September 18, 2019.  The motion is now ripe for review.

## II.  STANDARD

When the defendant challenges personal jurisdiction, the plaintiff has the burden of showing that jurisdiction exists.  See In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997).  When the court decides a personal jurisdiction challenge without an evidentiary hearing, the plaintiff must prove a prima facie case of personal jurisdiction.  See Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993).  "In considering the challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction."  In re Celotex Corp., 124 F.3d at 628 (quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)).  However, the court need not "credit conclusory allegations or draw farfetched inferences."  Masselli & Lane, PC v. Miller & Schuh, PA, 2000 WL 691100, at *1 (4th Cir. May 30, 2000) (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)).

## III.  DISCUSSION

### A. Ford's Motion to Dismiss

Ford argues that plaintiffs cannot show that the court has personal jurisdiction over it.  In their response, plaintiffs concede that the court does not have general personal jurisdiction over Ford, but contend that the court may exercise specific personal jurisdiction over Ford.  Consequently, resolution of the instant motion requires an analysis of the court's ability to exercise specific personal jurisdiction over Ford under South Carolina's long-arm statute and in consideration of Ford's protections under the Due Process Clause of the Constitution.  Plaintiffs also request the opportunity to conduct jurisdictional discovery if the court is inclined to find a lack of personal jurisdiction.

### a. Jurisdictional Inquiry

In evaluating a challenge to personal jurisdiction under a state's long-arm statute, the court engages in a two-step analysis.  Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993).  First, the long-arm statute must authorize the exercise of jurisdiction under the facts presented.  Id.  Second, if the statute does authorize jurisdiction, then the court must determine if the statutory assertion of personal jurisdiction is consistent with due process.  Id.  South Carolina's long-arm statute extends its reach to the outer limits allowed by the Due Process Clause.  Foster v. Arletty 3 Sarl, 278 F.3d 409, 414 (4th Cir. 2002).  Consequently, the only question before the court is whether the exercise of personal jurisdiction would violate due process.  ESAB Grp., Inc. v. Centricut, LLC, 34 F.Supp.2d 323, 328 (D.S.C. 1999).

The due process test for personal jurisdiction involves two components: minimum contacts and fairness.  See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286

(1980).  Under the minimum contacts test, a nonresident defendant must have certain minimum contacts such that the suit does not offend "traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement, 326 U.S. 310, 316 (1945).  Due process is satisfied if the court asserts personal jurisdiction over a defendant who "purposefully avails itself of the privilege of conducting activities within the forum state," Hanson v. Denckla, 357 U.S. 235, 253 (1958), such that it "should reasonably anticipate being haled into court there," World-Wide Volkswagen, 444 U.S. at 297.  After a showing of the defendant's purposeful availment, the reasonableness inquiry balances any burden on the defendant against countervailing concerns such as the plaintiff's interest in obtaining relief and the forum state's interest in the controversy.  See id. at 292.

Specific jurisdiction arises when a cause of action is related to the defendant's activities within the forum state. See S.C. Code Ann. § 36-2-803; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). The Fourth Circuit applies a three-part test when evaluating the propriety of exercising specific jurisdiction: (1) whether and to what extent the defendant purposely availed itself of the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws; (2) whether the plaintiff's claims arise out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally "reasonable."  Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215–16 (4th Cir. 2001) (citing Helicopteros, 466 U.S. at 414–16; Burger King v. Rudzewicz, 471 U.S. 462, 472, 476–77 (1985)).

Ford argues that the court does not have specific jurisdiction over it because plaintiffs cannot show that their claims against Ford "arise out of" Ford's activities in South Carolina. ECF No. 9-1 at 13. "In order for a state court to exercise specific jurisdiction, the suit must aris[e] out of or relat[e] to the defendant's contacts with the forum." Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., 137 S. Ct. 1773, 1780 (2017) (internal quotation marks omitted; emphasis in original) (quoting Daimler AG v. Bauman, 571 U.S. 117, 126). "When there is no such connection [between the plaintiffs' claims and the defendant's contacts with the forum], specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." Bristol-Myers, 137 S. Ct. at 1781. Further, claims to which specific jurisdiction will attach must "arise out of contacts that the defendant himself creates with the forum state." Walden v. Fiore, 571 U.S. 277, 284 (2014) (quoting Burger King, 471 U.S. at 475). In other words, conduct of plaintiffs or third parties that creates a connection between the defendant and the forum state will be disregarded.

Ford has presented evidence that it is a Delaware corporation with its principal place of business in Michigan. ECF No. 9-2 at ¶ 9. Additionally, Ford has presented evidence that plaintiffs purchased the subject 2014 Ford Edge from an independently owned Ford dealership in Michigan. Id. at ¶ 8. Ford has also presented evidence that the Edge model was primarily designed and developed in Michigan and that it was manufactured in Ontario, Canada. Id. at ¶¶ 6-7. In short, all the evidence presented on this narrow issue tends to show that the plaintiffs' claims arise from Ford's contacts with other forums, and not from its contacts with South Carolina.

In contrast, plaintiffs have presented no evidence that demonstrates that their specific claims against Ford arise from Ford's contacts with South Carolina. Although plaintiffs have presented evidence of Ford's purposefully availing activities in South Carolina, they must do more than show a general connection between the forum and the defendant. In their response, plaintiffs point to the extent and pervasiveness of Ford's contacts in South Carolina as a basis for exercising specific jurisdiction. The number and extent of Ford's contacts with South Carolina, however, does not change the <u>Bristol-Myers</u> requirement that the plaintiffs' suit <u>must</u> arise out of Ford's contacts with the forum state. Plaintiffs must show that their claims arise from some specific purposefully availing activity that Ford conducts in South Carolina. Plaintiffs have not made such a showing.

In its motion, Ford cites a number of factually similar cases in which various courts dismissed Ford from lawsuits for want of specific jurisdiction. In those cases, plaintiffs could not show that their claims "arose from" Ford's contacts with the respective forum states. <u>See, e.g.</u>, (1) <u>Brown v. Ford Motor Co.</u>, 347 F. Supp. 3d 1347 (N.D. Ga. 2018) (holding that Ford's "continuous and systematic" contacts with Georgia were not sufficient to confer specific jurisdiction absent evidence that plaintiff's claims arose out of those contacts); (2) <u>Pitts v. Ford Motor Co.</u>, 127 F. Supp. 3d 676, 686 (S.D. Miss. 2015) (finding that plaintiffs' claims did not arise out of Ford's contacts with the forum state where the plaintiff purchased the vehicle in a different forum and subsequently transported it to the forum state); (3) <u>Sullivan v. Ford Motor Co</u>, 2016 WL 6520174, at *3 (N.D. Cal. Nov. 3, 2016) (finding that the plaintiff's claim did not arise from Ford's contacts with California where his vehicle was manufactured in Kentucky

and sold by Ford to a Minnesota dealership); (4) Erwin v. Ford Motor Co., 2016 WL 7655398, at *7 (M.D. Fla. Aug. 31, 2016) (finding no specific jurisdiction over Ford where the plaintiff's claims did not arise out of or relate to Ford's contacts in Florida); (5) Cahen v. Toyota Motor Corp., 147 F. Supp. 3d 955, 964 (N.D. Cal. 2015), aff'd, 717 F. App'x 720 (9th Cir. 2017) (finding no specific jurisdiction over Ford where the plaintiff's claims were not tied to Ford's activities in the forum state); (6) Kommer v. Ford Motor Co., 2019 WL 2895384, at *3 (N.D.N.Y. June 19, 2019) (finding no specific jurisdiction over Ford in New York where plaintiffs purchased Ford trucks in Ohio, Indiana, and Pennsylvania). These cases are analogous to this case in their facts and legal analysis. The court therefore finds that plaintiffs' claims do not arise from Ford's contacts in South Carolina.

Plaintiffs rely on a case from the Supreme Court of Minnesota, Bandemer v. Ford Motor Company, which subjected Ford Motor Company to personal jurisdiction under very similar circumstances. 931 N.W.2d 744 (2019). The Supreme Court of Minnesota's interpretation of federal due process is not binding on this court. In determining whether the exercise of specific jurisdiction comports with a defendant's due process rights, courts in Minnesota employ a five-factor test, which, like the test in this Circuit, requires a showing of connectedness between the defendant's contacts and the plaintiff's claims. Bandemer, 931 N.W.2d at 751. Minnesota liberally construes the connectedness prong and finds sufficient connectedness where the defendant's contacts "are related to that litigation." Id. That is not the law of this Circuit. Under the Fourth Circuit test, mere relatedness is not enough—a plaintiff's claim must "arise out of" the defendant's availing contacts. Nolan, 259 F.3d at 215–16. Where Minnesota's test requires relatedness, the

Fourth Circuit's requires causation.  Fourth Circuit precedent is binding on this court, and the court refuses to substitute well-accepted Fourth Circuit law for the law of Minnesota.  Therefore, the plaintiffs' reliance on this case is misplaced.

In their response to Ford's motion to dismiss, plaintiffs also rely on the Fourth Circuit's "stream of commerce plus" test as a means by which the court could exercise specific jurisdiction over Ford.  ECF No. 14 at 4.  This reliance is also misplaced.

Under the "stream of commerce plus" test, which applies to the exercise of specific jurisdiction over component-part manufacturers and distributors, a non-resident defendant may be subject to specific jurisdiction in a given forum where it placed a product in the stream of commerce and engaged in some additional conduct that showed an intent to serve the market in that forum state.  See Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty., 480 U.S. 102, 112 (1987).  Plaintiffs seek to apply this test to the instant case, but ignore a necessary condition precedent.

Stream of commerce jurisprudence concerns the placement of a good into the stream of commerce by a component-part manufacturer or distributor before the finished product reaches a retailer, and ultimately, a consumer.  As the Supreme Court noted in J. McIntyre, "[stream of commerce] refers to the movement of goods from manufacturers through distributors to consumers, yet beyond that descriptive purpose its meaning is far from exact."  J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 881 (2011).  What does seem clear, however, is that the stream of commerce discussion ends when a retailer makes a sale to a consumer.  The purpose of the stream of commerce doctrine is to hold manufacturers and distributors of goods accountable for defective goods after making a sale of such a good within the "stream of commerce," that is, before the product reaches a

8

consumer. The doctrine is simply inapplicable to a retailer who makes a sale of a good directly to a consumer. In other words, stream of commerce doctrine does not apply to retailers whose products are taken into a different forum. The stream of commerce doctrine is not a tool by which a plaintiff may circumvent the Fourth Circuit's "arises from" requirement for specific jurisdiction.

Although the Fourth Circuit has not confronted this exact issue, the Fifth Circuit has explicitly stated: "Once a product has reached the end of the stream and is purchased, a consumer's unilateral decision to take a product to a distant state, without more, is insufficient to confer personal jurisdiction over the manufacturer or distributor." Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 273 (5th Cir. 2006); see also Irvin v. S. Snow Mfg., Inc., 517 F. App'x 229, 232 (5th Cir. 2013) (finding stream of commerce analysis inapplicable where the plaintiff purchased machinery from the defendant outside of the forum and was subsequently injured by the machinery within the forum).

This conclusion follows logically from the requirement, discussed above, that a defendant's contacts with a forum for the purposes of personal jurisdiction must be purposefully made by him, not by the plaintiff or third parties. "[T]he mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." World-Wide Volkswagen, 444 U.S. 286, 298 (1980) (citing Hanson, 357 U.S. at 253). In short, stream of commerce analysis is irrelevant to the case at hand because the plaintiff moved the vehicle into a different forum after its purchase. Therefore, because the plaintiffs cannot show that their claims arise out of Ford's contacts with South Carolina, the court is without the authority to exercise jurisdiction over Ford. Thus, plaintiff's claims against Ford must be dismissed.

### b. Plaintiffs' Request for Jurisdictional Discovery

Plaintiffs have requested that, in the event the court finds personal jurisdiction lacking, the court grant plaintiffs ninety days leave to conduct jurisdictional discovery and submit supplemental briefing on the issue of personal jurisdiction.

District courts "have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them]." Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 64 (4th Cir. 1993). The Fourth Circuit has stated that "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 402 (4th Cir. 2003) (citing McLaughlin v. McPhail, 707 F.2d 800, 806 (4th Cir. 1983)) (holding that district court did not abuse its discretion in denying jurisdictional discovery when, against the defendants' affidavits, plaintiff offered nothing beyond bare allegations that the defendants had had significant contacts with the forum state) (internal quotation marks omitted).

Plaintiffs request jurisdictional discovery for the purpose of "test[ing] Ford's assertions and shin[ing] light on the extent of Ford's South Carolina contacts." ECF No. 15 at 7. This request largely misses the point. The extent of Ford's contacts with South Carolina is irrelevant to the critical jurisdictional issue presented here. Instead, plaintiffs must show that their specific claims arise out of Ford's contacts with South Carolina. Plaintiffs have presented no such evidence nor made any such allegation. Ford, on the other hand, has presented uncontradicted evidence that the plaintiffs' claims have no connection to Ford's contacts in South Carolina. See ECF No. 9-2. Plaintiffs state the

bare conclusion that the court has specific jurisdiction over Ford without presenting evidence or alleging that it might find evidence of any connection between their claims and Ford's contacts in South Carolina. Further, the court hard-pressed to think of any evidence plaintiffs could uncover that would satisfy the "arises from" requirement. Therefore, the plaintiffs' request for jurisdictional discovery is denied.

**B. Ford's Motion to Stay Discovery**

Because the court grants Ford's motion to dismiss and dismisses it as a defendant in this case, Ford's motion to stay discovery is moot.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to dismiss, without prejudice.  Additionally, the court **FINDS AS MOOT** the motion to stay discovery.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 26, 2019**
**Charleston, South Carolina**